NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12485


WARREN YEE  vs.  MASSACHUSETTS STATE POLICE.


Suffolk.     October 1, 2018. - January 29, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


State Police.  Anti-Discrimination Law, Employment, Age, Race.
     Employment, Discrimination.  Public Employment, Police,
     Transfer.



Civil action commenced in the Superior Court Department on
April 3, 2014.

The case was heard by Paul D. Wilson, J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Jonathan J. Margolis (Beth R. Myers also present) for the
plaintiff.
Jesse M. Boodoo, Assistant Attorney General, for the
defendant.
The following submitted briefs for amici curiae:
Ben Robbins & Martin J. Newhouse for New England Legal
Foundation.
Simone R. Liebman & Constance M. McGrane for Massachusetts
Commission Against Discrimination.
Naomi Shatz for Fair Employment Project, Inc., & others.

GANTS, C.J.  The plaintiff, a lieutenant in the Massachusetts State police, filed suit alleging that he suffered discrimination in violation of G. L. c. 151B, § 4, when he was unjustifiably denied a transfer to a different troop station on the basis of his age, race, or national origin.[1]  A Superior Court judge granted the motion of the State police for summary judgment, concluding that the plaintiff had not met his burden of showing that the denial of his request for a lateral transfer was an "adverse employment action," as required to prove an

_____

[1] General Laws c. 151B, § 4 (1), provides that it is an unlawful practice for an employer to "refuse to hire or employ or to bar or to discharge from employment [an] individual or to discriminate against such individual," on the basis of a protected status such as race or national origin, "in compensation or in terms, conditions or privileges of employment, unless based on a bona fide occupational qualification."  The Commonwealth and its political subdivisions, including the State police, are covered by c. 151B.  Bain v. Springfield, 424 Mass. 758, 763 (1997).

The provision of c. 151B governing age discrimination distinguishes between private sector employers and the government as an employer.  The section specifically covering the Commonwealth and its subdivisions is phrased somewhat differently from the section covering private employers.  Compare G. L. c. 151B, § 4 (1C), with G. L. c. 151B, § 4 (1B).  Section 4 (1C) provides that it is unlawful "[f]or the commonwealth or any of its political subdivisions, by itself or its agent, because of the age of any individual, to refuse to hire or employ or to bar or discharge from employment such individual in compensation or in terms, conditions or privileges of employment unless pursuant to any other general or special law."  Because the State police have not alleged that Yee's claim falls outside the scope of this section, we decline to address whether the statute's omission of "discriminat[ion]" would bar a claim for refusal to grant a request for transfer.

employment discrimination claim under c. 151B.  We hold that where there are material differences between two positions in the opportunity to earn compensation, or in the terms, conditions, or privileges of employment, the failure to grant a lateral transfer to the preferred position may constitute an adverse employment action under c. 151B.  Because the plaintiff has offered adequate evidence that he would have greater opportunities to earn overtime and obtain paid details in the troop to which he seeks transfer, we vacate the allowance of summary judgment and remand the case for further proceedings.[2]

Background.  We set forth the relevant facts in the summary judgment record in the light most favorable to the nonmoving party, which in this case is the plaintiff, reserving some facts for our subsequent discussion of the legal issues.[3]  See Carey v. New England Organ Bank, 446 Mass. 270, 273 (2006).  The plaintiff, Warren Yee, was born in Hong Kong in 1954 and later immigrated and became a citizen of the United States.  He

---

[2] We acknowledge the amicus briefs submitted by the New England Legal Foundation; the Massachusetts Commission Against Discrimination; and the Fair Employment Project, Inc., GLBTQ Legal Advocates & Defenders, Greater Boston Legal Services, Jewish Alliance for Law and Social Action, Lawyers' Committee for Civil Rights and Economic Justice, Massachusetts Employment Lawyers Association, the Union of Minority Neighborhoods, and the American Civil Liberties Union of Massachusetts.

[3] The plaintiff has moved to supplement the summary judgment record on appeal.  We deny the motion and decide the appeal on the same record available to the motion judge.

identifies as a Chinese Asian-American.  Yee began working as a police officer for the Massachusetts District Commission (MDC) in 1980.  He was promoted to the position of sergeant in 1986, and was later transferred to the Massachusetts State police in 1992, after the State police merged with the MDC.  In 1998, he was promoted to the position of lieutenant.  From 2005 until at least the time this complaint was filed, he has served as a lieutenant shift commander at the headquarters of State police Troop H, located in the South Boston section of Boston.

In December 2008, Yee requested a transfer to State police Troop F, the unit headquartered at Logan International Airport in the East Boston section of Boston.  State police lieutenants earn the same base pay and benefits regardless of station, but Yee testified that he wanted to transfer to Troop F because he "knew that there was better overtime and [paid details] at Troop F."[4]  Yee claims to have "taken steps to keep his interest in that transfer known to his superiors continuously since that request was first made."

The State police has no written policy governing transfers of lieutenants.  When there is an open position for a lieutenant in a troop, the troop commander nominates a candidate, but the

---

[4] Lieutenant Warren Yee speaks Chinese, and he testified that he also wanted to transfer to Troop F because he could "be useful" at the airport, where there were many travelers of Asian descent.

decision whether to approve the nomination rests with the Superintendent of the State police. The troop commander has broad discretion in nominating a candidate for transfer.

During the time period between his initial 2008 request and September 2012, the State police had either transferred or promoted seven troopers to Troop F in the position of lieutenant; all were white males. Five out of those seven troopers were younger than Yee when they became Troop F lieutenants. Yee was never offered a transfer to Troop F and was never interviewed regarding a transfer position.

On September 20, 2012, Yee wrote a letter to the Superintendent and others complaining of discrimination on the basis of his age or ethnic background. On September 23, 2012, two days after the letter was received, a forty-nine year old white male police sergeant in Troop H, Shawn Lydon, was promoted to lieutenant and transferred to Troop F even though he had not requested a transfer to Troop F. Lydon served in Troop F for approximately two years, during which time he earned over $30,000 more per year in overtime and detail pay than he had when he served in Troop H. When Lydon was later transferred back to Troop H, his annual overtime and detail earnings dropped by about $30,000 per year. After Yee sent his letter complaining of discrimination, at least two other lieutenants

apart from Lydon were transferred to or promoted within Troop F; both were white males.

On April 3, 2014, Yee filed a complaint in the Superior Court, alleging that the State police discriminated against him on the basis of race, age, and national origin by failing to transfer him to Troop F.  The State police moved for summary judgment, contending that no adverse employment action had been taken against Yee and that, even if there had been, there was no discriminatory animus that motivated the State police's decision not to transfer him.

The judge granted the motion for summary judgment, concluding that the summary judgment record would not permit a jury reasonably to find that Yee "was subjected to an adverse employment action when the State police declined to transfer him laterally from one troop to another."  Citing MacCormack v. Boston Edison Co., 423 Mass. 652, 663 (1996), the judge declared that a plaintiff who brings an employment discrimination claim "must show an adverse employment action that materially changes objective aspects of the plaintiff's employment."  In the context of this case, the judge determined that, for Yee to avoid summary judgment, there needed to be sufficient evidence in the record to allow a jury reasonably to conclude that Yee "lost money when the State [p]olice declined to transfer him to Troop F," either by showing that "a lieutenant at Troop F

automatically earned more money than a lieutenant at Troop H," or by presenting "statistical data showing that lieutenants at [Troop F] routinely earn more money than lieutenants at [Troop H]." The judge found that the only evidence of a "potential earnings differential between Troop H and Troop F" was the additional income that Lydon earned from overtime and details when he transferred from Troop H to Troop F, and his corresponding drop in these earnings after he returned to Troop H. The judge concluded that this evidence was insufficient to defeat summary judgment because it was "entirely anecdotal, concerning the experience of only one of the nine potential comparators who became lieutenants at Troop F in the relevant period," and because Yee had offered no evidence that would permit a reasonable jury to conclude that Yee "would have worked the same paid details and just as much overtime" as Lydon did.

Yee timely appealed. We transferred Yee's appeal to this court on our own motion to decide whether the denial of his request for a lateral transfer may constitute an adverse employment action under G. L. c. 151B, § 4, and if so, whether the motion judge erred in granting the State police's motion for summary judgment.

Discussion. Our review on summary judgment is de novo. LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 318 (2012). In determining whether an employee's discrimination

claim survives a motion for summary judgment, we apply the three-stage, burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973) (McDonnell Douglas).  See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680-681 (2016).  We discuss each stage of the McDonnell Douglas framework in turn.

1.  Adverse employment action.  Under the first stage of McDonnell Douglas, Yee bears the burden of producing evidence of a prima facie case of discrimination that would allow a jury to infer that:  (1) he is a member of a class protected by G. L. c. 151B; (2) he performed his job at Troop H at an acceptable level; (3) his transfer request was treated differently from that of another person who was not a member of his protected class but otherwise was similarly situated; and (4) the continued denial of his request for a lateral transfer to Troop F was an adverse employment action.[5]  See Trustees of Health & Hosps. of Boston, Inc. v. Massachusetts Comm'n Against Discrimination, 449 Mass. 675, 681-682 (2007) (Trustees of Health & Hosps.); Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 396 (2016). The State

_____

[5] The elements of the prima facie case may vary depending on the nature of the discrimination claim.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973); Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 135 n.5 (1976).

police contends that Yee failed to meet this burden only because the denial of a lateral transfer from one troop to another is not an adverse employment action.

The phrase "adverse employment action" does not appear in G. L. c. 151B, but we use the phrase to determine when an act of discrimination against an employee "in compensation or in terms, conditions or privileges of employment" may be remedied under c. 151B.[6]  Where an employer discriminates against an employee

_____

[6] We often do not distinguish among "terms," "conditions," and "privileges" of employment, or attempt to define them separately.  See, e.g., College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination, 400 Mass. 156, 162 (1987) ("Clearly, within the broad sweep of [terms, conditions, or privileges of employment] falls conduct which creates a sexually harassing work environment"); Lopez v. Commonwealth, 463 Mass. 696, 707 (2012) (right to equal opportunities for promotion without discrimination falls within "right to be free from discrimination in the terms, conditions, and privileges of employment").  We attempt to do so here, defining these words as they are commonly used in our case law, albeit recognizing that the phrase "terms, conditions, or privileges" is "general and broad, and must be determined on a case by case basis" (quotation and citation omitted).  School Comm. of Newton v. Newton Sch. Custodians Ass'n, Local 454, SEIU, 438 Mass. 739, 749 (2003).  See also Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997) (same language in Title VII is "pretty open-ended").  We therefore decline to attach any strict limits to the definitions we offer.

The "terms of employment" govern the employment relationship, such as personnel policies, see Weber v. Community Teamwork, 434 Mass. 761, 780-781 (2001), or contractual provisions that may be either explicit or implied.  See Black's Law Dictionary 1698-1699 (10th ed. 2014).

The "conditions of employment" may refer to the economic or financial conditions of employment, see Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986), such as wages and hours,

but the discriminatory act falls short of being an "adverse employment action," c. 151B affords the employee no remedy for the discrimination.  King v. Boston, 71 Mass. App. Ct. 460, 469 (2008) ("a successful claim of employment discrimination

---

vacation pay, and sick leave, and therefore some may overlap with both the "terms of employment" and "compensation."  See G. L. c. 151B, § 4 (1).  "Conditions of employment" may also encompass the general environment, atmosphere, or quality of the work place.  See, e.g., Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632, 648 (2004); Gilbert's Case, 253 Mass. 538, 540 (1925); Windross v. Village Automotive Group, Inc., 71 Mass. App. Ct. 861, 868-869 (2008).  For example, the conditions of employment are often discussed in sexual harassment cases in the context of the creation of an abusive working environment.  See, e.g., Meritor Sav. Bank, FSB, supra at 67; McKenzie v. Illinois Dep't of Transp., 92 F.3d 473, 479 (7th Cir. 1996).

A "privilege of employment" is an unmandated benefit that, "though not a contractual right of employment," is nonetheless customarily provided by an employer to its employees, and is therefore "part and parcel of the employment relationship [and] may not be doled out in a discriminatory fashion."  Hishon v. King & Spalding, 467 U.S. 69, 75 (1984).  See also Randlett, supra at 862 (hardship transfers were commonly granted by employer and therefore were "arguably a 'privilege' of employment"); Blackie v. Maine, 75 F.3d 716, 726 (1st Cir. 1996).

Our definitions of terms, conditions, and privileges of employment here are limited to the context of enforcement of G. L. c. 151B.  We recognize, for example, that pursuant to G. L. c. 150E, § 6, municipalities are required to negotiate with public employee unions with respect to the "terms and conditions" of union member employment.  As to the definitions of terms and conditions of employment in that context, we refer to our existing case law.  See, e.g., Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 570 (2015) (municipal contributions to retiree health insurance premiums not "term or condition of employment" subject to mandatory collective bargaining).

requires a showing that the plaintiff has been subjected to some adverse action that is material"). Therefore, in defining the phrase, we are essentially defining the remedial scope of c. 151B. Because the Legislature has directed that c. 151B "shall be construed liberally for the accomplishment of its purposes," G. L. c. 151B, § 9, we must define the phrase with the liberality required to meet the statute's broad remedial goals. See Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 620 (2013) ("Employment statutes in particular are to be liberally construed, with some imagination of the purposes which lie behind them" [quotation and citation omitted]).

"Cases have employed the phrase 'adverse employment action' to refer to the effects on working terms, conditions, or privileges that are material, and thus governed by the statute, as opposed to those effects that are trivial and so not properly the subject of a discrimination claim." King, 71 Mass. App. Ct. at 468, and cases cited. We have said that an action taken by an employer is an "adverse employment action" where it is "substantial enough to have materially disadvantaged an employee." Psy-Ed Corp. v. Klein, 459 Mass. 697, 707-708 (2011). "Material disadvantage for this purpose arises when objective aspects of the work environment are affected." King, supra. The disadvantage must be objectively apparent to a reasonable person in the employee's position; "subjective

feelings of disappointment and disillusionment" will not suffice.  MacCormack, 423 Mass. at 663.  Because we focus on a reasonable person in the employee's position, we examine whether an employee has suffered an "adverse employment action" on a case-by-case basis.  King, supra at 470, quoting Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996).  A lateral transfer from an evening to a day shift may be an adverse employment action to one employee, but be welcomed by another.  See Bell v. Gonzales, 398 F. Supp. 2d 78, 97 (D.D.C. 2005) (whether loss of overtime constitutes adverse employment action is fact-specific inquiry because some employees desire to work overtime and others do not).

Here, Yee contends that the failure to grant him the transfer was an adverse employment action because Troop F offered more opportunities for overtime and paid details than Troop H and therefore offered him a greater opportunity to increase his over-all compensation, even though his base salary and benefits would be unaffected by the transfer.  We have not previously reached the question whether a failure to grant a lateral transfer may constitute an adverse employment action. The failure to grant a lateral transfer is certainly an "employment action" by an employer where an employee with supervisory authority, whose actions we impute to the employer, see College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n

Against Discrimination, 400 Mass. 156, 165 (1987), makes a decision to choose someone else for the lateral position or decides not to transfer the employee seeking the transfer to that position. See Weber v. Community Teamwork, Inc., 434 Mass. 761, 767-769 (2001). And the denial of a transfer to an employee is undoubtedly "adverse" where it would deprive the employee of the potential to earn additional "compensation," which -- if motivated by discriminatory animus -- G. L. c. 151B, § 4, expressly forbids. We thus conclude that where an employee can show that there are material differences between two positions in the opportunity for compensation, or in the terms, conditions, or privileges of employment, the failure to grant a lateral transfer to the preferred position may constitute an adverse employment action under c. 151B. See Harrison v. Boston Fin. Data Servs., Inc., 37 Mass. App. Ct. 133, 137-138 (1994) (employee made out prima facie case of discrimination by asserting, inter alia, that she was not provided with training and educational opportunities given to white employees).

We note that a number of Federal courts have confronted this question and arrived at the same conclusion. In interpreting G. L. c. 151B, we often look to case law construing the analogous Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e-2(a)(1) (Title VII).[7]  See, e.g.,

College-Town, Div. of Interco, Inc., 400 Mass. at 163; Brown v.

F.L. Roberts & Co., 452 Mass. 674, 680 (2008).  A number of

Federal courts have expressly held that the denial of

opportunities to work overtime may suffice to support an

unlawful discrimination claim.  See, e.g., Garmon v. National

R.R. Passenger Corp., 844 F.3d 307, 314 (1st Cir. 2016)

("decreased overtime opportunities could cause a 'material'

change in the conditions of a plaintiff's employment"); Lewis v.

Chicago, 496 F.3d 645, 654 (7th Cir. 2007) (denial to Chicago

police officer of opportunity to travel to Washington, D.C., to

work detail assignment involving crowd control was adverse

action, not only because she would have been paid overtime for

---

[7] Title 42 U.S.C. § 2000e-2(a)(1) provides, in part:

"It shall be an unlawful employment practice for an
employer --

"(1) to fail or refuse to hire or to discharge any
individual, or otherwise to discriminate against any
individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin
. . . . "

We also may look to employment cases interpreting 42 U.S.C.
§ 1981, which applies the same legal framework as Title VII.
Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 70 (1st Cir.
2011).  Title 42 U.S.C. § 1981(a) and (b) similarly prescribes:
"All persons . . . shall have the same right . . . to make and
enforce contracts . . . [including] the enjoyment of all
benefits, privileges, terms, and conditions of the contractual
relationship."

that particular assignment, but also because "she lost her ability to move forward in the component of her career of being a police officer at recurring large scale public gatherings" and, in turn, "lost the potential to earn many hours of overtime" in future); Robinson v. District of Columbia, 275 F. Supp. 3d 95, 105-106 (D.D.C. 2017) (potential for lost overtime pay may constitute adverse action where it was known to employer that employee desired opportunity to work overtime); Bell, 398 F. Supp. 2d at 97-98 (same). See also Mazyck v. Metro. Transp. Auth., 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012) (lost opportunities to earn overtime pay constituted adverse employment action). Cf. Bush v. American Honda Motor Co., 227 F. Supp. 2d 780, 790 n.8 (S.D. Oh. 2002) (lost opportunity to receive potential future bonuses or promotions may amount to adverse employment action).[8] It would be a curious result for us

---

[8] In this analysis, our citations to Federal cases concern discussions of Title VII discrimination claims, as opposed to retaliation claims. A split in the Federal Courts of Appeals existed regarding whether the meaning of an "adverse action" differed between discrimination and retaliation claims under Title VII until the Supreme Court resolved the dispute in Burlington N. & Santa Fe R. R. v. White, 548 U.S. 53, 60, 64 (2006). The Supreme Court held that adverse actions under the antidiscrimination provision are limited to conduct affecting "compensation, terms, conditions, or privileges of employment," id. at 62, but in the antiretaliation context, the challenged action must only have "dissuaded a reasonable worker from making or supporting a charge of discrimination" (citation omitted), id. at 68. In deciding this case, we need not reach the question whether to apply a different standard to defining

to interpret c. 151B to provide less protection against employment discrimination than Title VII, given that we at times interpret G. L. c. 151B to provide more protection against employment discrimination than Title VII, in part because of the Legislature's direction that c. 151B is to be applied liberally. See G. L. c. 151B, § 9; Cuddyer v. Stop & Shop Supermkt. Co., 434 Mass. 521, 536 (2001). There is no such comparable language in Title VII.

We reject the argument of the State police that the denial of a lateral transfer may be an adverse employment action only where the transfer would have constituted a promotion. To satisfy the element of an adverse employment action in the prima facie case, it suffices that an employee who is denied a lateral

---

adverse employment actions in the retaliation context under G. L. c. 151B.

Additionally, in citing to Federal cases that support Yee's claim that loss of opportunity to earn overtime and paid detail compensation may constitute an adverse employment action, we are aware that another provision of Title VII -- 42 U.S.C. § 2000e-2(a)(2) -- provides that it is an unlawful practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin" (emphasis added). General Laws c. 151B does not contain a comparable provision expressly referencing "employment opportunities." However, none of the cases discussed herein relies on § 2000e-2(a)(2) or its reference to "employment opportunities." We are therefore satisfied that it is proper to consider Federal Title VII cases that have analyzed the comparable adverse action requirement.

transfer puts forward evidence of any "objective indicator of desirability" that would "permit a reasonable factfinder to conclude that the sought for position is materially more advantageous." Beyer v. County of Nassau, 524 F.3d 160, 165 (2d Cir. 2008). We conclude that Yee's desire to transfer to a troop where he had more opportunity to earn additional compensation through the greater availability of overtime and paid details is an objective indicator of desirability.[9]

The closer question is whether Yee met his burden of producing adequate evidence that Troop F offered greater opportunities for overtime and paid details than Troop H. The only evidence before us, other than Yee's own assertions, is testimony from a single comparator, Lydon, who earned approximately $30,000 more per year in overtime and detail compensation during the two years after he left Troop H to work

---

[9] Because Yee argues that the denial of his requested lateral transfer was an adverse employment action primarily because it denied him the potential for additional compensation through overtime and detail pay, we do not address whether the denial of the lateral transfer would have been an adverse employment action had he sought the transfer only to use his Chinese language skills to assist Chinese visitors who use the airport. Nor do we address whether an employee would have a viable discrimination claim -- on the basis of a hostile work environment or a denial of a "privilege" of employment, such as being considered for a customary benefit, see King v. Boston, 71 Mass. App. Ct. 460, 471 (2008), citing Hishon, 467 U.S. at 76-77 -- if the employee could establish that the leadership of a particular work station will not accept for transfer persons of a particular protected class under c. 151B.

in Troop F, and then earned approximately $30,000 less per year after he was transferred back to Troop H.  In evaluating whether Yee met this threshold showing, we note that the "initial burden of establishing a prima facie case is not intended to be onerous."  Trustees of Health & Hosps., 449 Mass. at 683, quoting Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 45 (2005).  "It is meant to be a 'small showing' that is 'easily made.'"  Trustees of Health & Hosps., supra, quoting Chungchi Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003).  To establish a prima facie case, the plaintiff bears only the burden of production, which is satisfied by furnishing evidence in support of each element; the burden of persuasion that an element of the prima facie case has not been established rests with the defendant on summary judgment, even though it rests with the plaintiff at trial.  Sullivan, supra at 39.  As to the evidence proffered by the plaintiff, we view it in the light most favorable to the plaintiff, accepting all reasonable inferences favoring the plaintiff that flow from that evidence.  Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 474-475 (2013).

Generally, comparator evidence is intended to prove discrimination, such as where an employee who claims she was rejected from a job because of discrimination offers evidence that the person who obtained the position was less qualified

than she.  <u>Trustees of Health & Hosps</u>., 449 Mass. at 682-683.

Here, Yee offered comparator evidence, to show both that he was

denied the lateral transfer because of his race, national

origin, or age, and that the denial of the lateral position was

an adverse employment action because of the comparator's change

in earnings at Troop F.

We recognize that the summary judgment record regarding the

difference in potential earnings from overtime and paid details

between Troop H and Troop F is rather sparse, where it is

limited to the change in earnings of a single comparator, but we

conclude that it suffices to yield a genuine dispute of material

fact as to this element of the prima facie case of

discrimination.  Lydon was a close comparator to Yee; he had

been assigned to Troop H before being promoted to lieutenant,

was transferred to Troop F, and then returned to Troop H.  It is

theoretically possible that the opportunities for overtime and

paid details were the same in Troop H and Troop F, and that

Lydon simply availed himself of more of those opportunities when

he transferred to Troop F, and then chose not to when he

returned to Troop H.  But it is a more reasonable inference --

and one to which Yee is entitled at summary judgment -- that

Lydon's increase in earnings from overtime and paid details

derived, at least in part, from the greater opportunities

available in Troop F to work overtime and obtain paid details.

And, although the State police was in possession of evidence regarding the earnings from overtime and paid details of the other potential comparators, it did not offer such evidence to satisfy its burden of persuasion that the earnings opportunities were the same in Troop F as in Troop H.  Although evidence from a single comparator might prove to be insufficient to prevail at trial, we require only a modest evidentiary showing from plaintiffs to satisfy the prima facie stage of summary judgment.  Therefore, we conclude that the judge erred in determining that Yee had failed to meet his burden of showing a prima facie case of discrimination.

2.  <u>Discrimination</u>.  Because the judge granted summary judgment to the State police on the ground that Yee had failed to show an adverse employment action, he never reached the issue whether there was a genuine issue of material fact whether the denial of Yee's request for a lateral transfer was motivated by discriminatory animus.  We exercise our discretion to remand the matter to the motion judge to allow him to decide this issue.  See <u>Esler</u> v. <u>Sylvia-Reardon</u>, 473 Mass. 775, 781 (2016); <u>Christo</u> v. <u>Edward G. Boyle Ins. Agency, Inc</u>., 402 Mass. 815, 819 (1988).

On remand, the motion judge will need to apply the second and third stages of the <u>McDonnell Douglas</u> summary judgment framework.  At the second <u>McDonnell Douglas</u> stage, where the employee has successfully made out a prima facie case, "the

burden of production shifts to the employer to articulat[e] a legitimate, nondiscriminatory reason" for its decision to take the adverse action (quotation omitted).  Verdrager, 474 Mass. at 397, quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 441 (1995).  The burden of the State police here is not meant to be onerous.  Blare, supra at 442.  Even if the reasons given are arguably suspect, so long as the State police has produced a lawful reason backed by some credible evidence, it has satisfied this burden.  Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997).  However, its explanation must not be wholly unbelievable such that an underlying discriminatory motive is obvious.  See Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 138 (1976).

If the judge concludes that the State police has carried its burden of rebutting Yee's prima facie case with a nondiscriminatory explanation for denying Yee's request for the lateral transfer, the judge will reach the third and final McDonnell Douglas stage, where the burden of production shifts back to Yee to "produce evidence that the employer's articulated justification [for the adverse action] is not true but a pretext."  Verdrager, 474 Mass. at 397, quoting Blare, 419 Mass. at 443.  Yee may satisfy this burden by offering evidence which, when viewed in the light most favorable to Yee, is sufficient to

convince a reasonable jury that the reasons the State police offered for transferring Lydon instead of him were not the real reasons, thereby inviting the inference that discrimination was the motivating reason.  See Verdrager, supra.

Finally, although we have denied Yee's motion to supplement the summary judgment record on appeal, see note 3, supra, we recognize that a developed factual record is particularly critical where, as here, wholly subjective procedures are used to determine which candidates receive a lateral transfer.  See Smith College v. Massachusetts Comm'n Against Discrimination, 376 Mass. 221, 231 (1978) ("[T]he opportunity for unlawful bias is particularly great in such cases.  A most detailed and careful analysis of the facts is required").  On remand, the motion judge may decide whether to permit the parties to supplement the summary judgment record in determining whether there is a genuine issue of material fact whether the denial of Yee's request for a lateral transfer was motivated by discriminatory animus.

Conclusion.  The order allowing the motion of the State police for summary judgment is vacated, and the case is remanded to the motion judge to determine whether there is a genuine issue of material fact whether discrimination was the motivating reason for the denial of the plaintiff's request for transfer.

So ordered.