NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-861

WILLIAM T. DOWNEY

vs.

MASSACHUSETTS DEPARTMENT OF ENERGY RESOURCES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, William T. Downey, appeals from the grant of summary judgment in favor of the defendant, Massachusetts Department of Energy Resources (DOER), on Downey's age discrimination claim under G. L. c. 151B.  Downey applied for a newly created position of director of emerging technology in response to DOER's job posting.  He was sixty-three years old at the time of his application.  DOER did not grant Downey an interview, and, after interviewing three candidates, offered the position to a younger applicant.  Concluding that Downey has demonstrated a genuine issue of material fact regarding whether DOER's proffered reasons for not offering him an interview were pretextual, we reverse the grant of summary judgment for the defendant and remand for further proceedings.

Background.  We summarize the basic facts in the light most favorable to Downey, drawing all reasonable inferences in his favor, and reserving certain facts -- disputed and undisputed -- for later discussion.  See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016).  In 2015, the Commissioner of DOER, Judith Judson (commissioner), created the director of emerging technology position to head a new division within DOER.  The job was publicly posted on the Commonwealth's MassCareers online database with a narrative job description.  The position was classified as a program manager level VIII, which carried minimum entrance requirements of "five years of full-time, or equivalent part-time, supervisory or managerial experience in business administration, business management or public administration[,] of which at least two years [were] in a managerial capacity."  In addition, DOER staff, in consultation with the commissioner, drafted a management questionnaire (MQ) that served as the official internal description of the position identifying the minimum job requirements as five years in a "supervisory capacity" and seven years in "energy and emerging technology field."  Although the Massachusetts Executive Office of Energy and Environmental Affairs (EEA) department of human resources typically does an initial screen of applications submitted through the MassCareers system before electronically passing them to DOER's hiring manager, EEA did not screen

2

candidates because the commissioner had indicated she wanted the applications sent directly to her.

Downey submitted a cover letter, a one-page resume, a professional biography containing a list of his consulting assignments and professional experience, a publications list, and later a "DropBox" link to a book he had recently authored on the technology of electric vehicles.  He was not offered an interview.  Three candidates were selected to be interviewed.  Two of the candidates were under consideration prior to the job being posted publicly -- one who worked for a quasi public agency that works with DOER, and another who was an internal DOER candidate.  Ultimately, the third candidate was hired.

Discussion.  "Our review on summary judgment is de novo." Yee v. Massachusetts State Police, 481 Mass. 290, 294 (2019). "In considering a motion for summary judgment, we review the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party."  Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 395 (2016), quoting Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 777 (2013).  DOER, as the moving party, has "the burden of establishing that there is no genuine issue as to any material fact and that [it is] entitled to judgment as a matter of law" (citation omitted).  Id.

3

In an employment discrimination case, a plaintiff "may survive a motion for summary judgment by providing [d]irect evidence of [the] elements of discriminatory animus and causation" (quotation and citation omitted). Bulwer, 473 Mass. at 680. "Because direct evidence 'rarely exists,' however, [a] plaintiff may also survive such a motion by providing 'indirect or circumstantial evidence [of discriminatory animus and causation] using the familiar three-stage, burden-shifting paradigm first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)'" (citation omitted). Id. at 680-681. Here, the parties properly focus their arguments on the third stage of McDonnell Douglas, which requires a plaintiff to produce evidence from which a jury could find that at least one of the employer's articulated reasons for the adverse employment decision was not true. See Bulwer, supra at 681. "To survive a motion for summary judgment, the plaintiff need only present evidence from which a reasonable jury could infer that the respondent's facially proper reasons given for its action against him were not the real reasons for that action" (quotation and citation omitted). Id. at 682.

In essence, DOER asserted that Downey was not offered an interview because his resume did not reflect emerging technology

experience, as opposed to broad energy experience.[1]  More specifically, DOER explained that it decided not to interview Downey because the projects he listed on his resume "[bore] no relation whatsoever to energy storage, resiliency, microgrids, or other related emerging energy technologies" and his resume was "entirely devoid of any reference to the energy storage experience required in a candidate as outlined by the Program Manager job posting."

Among the documents submitted in his opposition to DOER's motion for summary judgment, Downey included an affidavit detailing the entries listed on his resume and their relationship to the policy areas identified by DOER.  In particular, he cited a project "concerning rural electrification, grid development, and small hydro [that] related to energy storage, microgrids, and resiliency," as well as experience "supervis[ing] installation of commercial [and] residential solar heating systems [and] small wind turbines." Downey further stated that his submission contained references to several of his "publications relating to emerging energy technologies, including solar and wind."  DOER argues that Downey's experience was dated and thus not applicable.  These

---

[1] We note that DOER initially stated that the commissioner did not remember reviewing Downey's resume.  DOER's explanations for not offering Downey an interview all came after the commissioner became aware of Downey's age discrimination complaint.

conflicting positions reflect a factual dispute that relies on credibility determinations. We are satisfied that the evidence provided by Downey was sufficient for a juror to infer that DOER's stated reasons for not interviewing Downing were pretextual.

DOER also indicated that the successful candidate's resume, in contrast to Downey's, "stood out . . . because the experience detailed therein aligned with the specific background [the commissioner] sought for the [p]osition." Downey contends that the commissioner was so focused on hiring a younger candidate that she "disregarded the minimum levels of experience that the position demanded." Although DOER asserts that it "believed [the candidate who ultimately was hired] met the minimum required qualifications," the commissioner testified in her deposition that she was unaware the requirements existed. That candidate met neither the publicly posted requirement of five years of management experience (the candidate had only four at the time) nor the internal MQ minimum qualification of seven years in energy and emerging technology (the candidate had been working in energy technology for thirty-three months). The issue is further complicated by the commissioner's decision to bypass EEA screening, which Downing contends would have resulted in the successful candidate's resume being screened out. On this record, we are further persuaded that Downey has supplied

facts that call into question the truthfulness of DOER's claim that age played no role in its decision to interview and ultimately hire the successful candidate.

Downey argues that additional evidence of pretext can be found in the "shifting nature" of the description of the criteria DOER claims it used to evaluate candidates at various stages of the hiring process and this litigation.  DOER counters that the criteria remained consistent, and that any inconsistencies reflect the commissioner's focus at various times on specific areas within those criteria.  On our review of the summary judgment record, we agree with Downey that there are sufficient substantive differences between the description of the job requirements in the public job posting, DOER's position statement to the Massachusetts Commission Against Discrimination, DOER's interrogatory response, and the commissioner's deposition testimony to support a reasonable inference of pretext.

Finally, Downey contends that DOER's failure to follow established Massachusetts State agency hiring procedures alone may give rise to an inference of discrimination.  Although DOER does not deny its failure to adhere to established practices contained in a "model hiring guidelines" promulgated by the executive branch's human resources division, it asserts that they were not mandatory.  Here there was evidence that DOER

7

deviated from guidelines that were provided to all managers in executive branch agencies, and that DOER acknowledged using in most other hiring decisions, by declining to (1) develop and apply screening criteria to select candidates to be interviewed; (2) involve the agency's diversity officer at various stages of the hiring process; (3) establish standard questions in advance of interviews and distribute them to an interview panel; (4) create objective written criteria for evaluating candidates based on their interviews; and (5) retain documentation of scoring candidates during the interview process.  We conclude that this evidence adequately supported an inference of DOER's discriminatory intent.  See Bulwer, 473 Mass. at 687 (failure to follow established procedures or criteria may support reasonable inference of intentional discrimination).

The judgment dated July 20, 2022, is reversed, and the matter is remanded for further proceedings consistent with this memorandum and order.

By the Court (Meade, Blake & Brennan, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  July 7, 2023.

---

[2] The panelists are listed in order of seniority.